IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| HELEN SINGLETARY and FAMILY ASSISTANCE MANAGEMENT SERVICES, <br><br> Plaintiffs, <br><br> vs. <br><br> BEAZLEY INSURANCE CO., INC., <br><br> Defendant. | No. 2:13-cv-1142-DCN <br><br> **ORDER** |

This matter is before the court on defendant Beazley Insurance Co., Inc.'s motion for summary judgment. For the reasons set forth below, the court grants summary judgment.

## I. BACKGROUND

Plaintiff Family Assistance Management Services ("FAMS") works as a representative payee for individuals who receive social security or supplemental security income.[1] Plaintiff Helen Singletary is apparently the principal of FAMS. Beazley issued a management liability insurance policy to FAMS for the period of November 6, 2009 to November 6, 2010. Def.'s Mot. for Summ. J. Ex. 3. The policy provides coverage under Insuring Clause A for a "Loss resulting from any Claim first made against any of the Insureds during the Policy Period for a Wrongful Act." Id.

On August 3, 2011, the Social Security Administration ("SSA") met with representatives of FAMS to discuss the allegation that Toni Melendez, a former director

---

[1] A representative payee is an individual or organization designated to receive social security payments for a beneficiary, either for direct payment to the individual or for his or her benefit. See 42 U.S.C. § 405(j).

1

and employee of FAMS, embezzled SSA beneficiaries' funds.[2]  Pls.' Reply to Countercl. ¶ 7.  The SSA informed FAMS that it would review all of FAMS's financial records and interview a sample of beneficiaries for whom FAMS acted as representative payee from January 2004 to October 2010.  Id.

The SSA issued a report, concluding that FAMS "did not adequately have controls over the receipt and disbursement of Social Security and Supplemental Security Income benefits" and, "as a result, the funds of beneficiaries were at risk for improper safekeeping and use."  Pls.' Reply to Countercl. ¶ 9; Def.'s Mot. Ex. 6.  Representative payees are liable for misused funds.  42 U.S.C. § 405(j)(7)(A).  The report concluded that FAMS did not use $513,471.49 appropriately as part of its duties as a representative payee.  Def.'s Mot. Ex. 6.  The SSA ordered FAMS to repay that amount to the SSA, which would then return the funds to the beneficiaries identified in the review.  Id.

On July 26, 2012, FAMS reported the SSA review to Beazley and provided a copy of the report.  Def.'s Mot. Ex. 7.  FAMS indicated that it had other insurance through The Hartford, which paid its full coverage of $300,000.  Id.  FAMS requested that Beazley pay the balance under the policy.  Id.  Beazley responded on August 15, 2012, advising FAMS that the policy did not afford coverage for the SSA review or any portion of the amount FAMS was required to pay in relation to that review.  Def.'s Mot. Ex. 9.

On February 28, 2013, FAMS and Singletary filed an action in the Charleston County Court of Common Pleas alleging breach of the insurance policy for failure to pay and bad faith refusal to pay.  FAMS and Singletary also seek a declaratory judgment that Beazley owes benefits under the policy.  Beazley removed the case to federal court on

---

[2] As reported by FAMS to its insurance broker in a November 15, 2010 letter, Melendez admitted to the embezzlement.  Def.'s Mot. Ex. 5.

2

April 26, 2013.  Beazley filed an answer and counterclaim on April 30, 2013, seeking a declaratory judgment that it is not obligated to pay plaintiffs under the policy.  Beazley moved for summary judgment on September 4, 2013.  ECF No. 16.  Plaintiffs responded on October 7, 2013.  A hearing was held October 30, 2013.  The matter is ripe for the court's review.

## II.  STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Id.</u> at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Id.</u> at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  <u>Id.</u> at 255.

### III. DISCUSSION

#### A. Breach of Insurance Policy Claim

Beazley argues that it is entitled to summary judgment on the breach of insurance policy claim because there has been no covered "loss" under the policy, and therefore coverage has not been triggered. Def.'s Mot. 9. The policy's definition of "loss" excludes "damages representing amounts allegedly owed under an express written contract, including a guarantee or obligation to make payments." Def.'s Mot. Ex. 3. A representative payee is appointed by the SSA only after the commissioner conducts an investigation of the person or entity to determine that such appointment is in the interest of the individual due the SSA benefits. See 42 U.S.C. § 405(j)(2)(A). As set forth in the SSA's "Program Operational Manual System," Def.'s Mot. Ex. 10, the representative payee is required to complete Form SSA-11 as part of the appointment process. Def.'s Mot. Ex. 11. That form includes a term requiring that the representative payee "[r]eimburse the amount of any loss suffered by any claimant due to misuse of Social Security or SSI funds by me/my organization." Def.'s Mot. Ex. 11. Beazley argues that the amounts identified in the SSA review as misused funds constitute amounts owed under an express written contract, Form SSA-11, and, as such, do not constitute a covered loss within the meaning of the policy.

Plaintiffs advance two arguments for why coverage exists under the policy. First, plaintiffs argue that there is no evidence that Singletary or FAMS misused any of the funds, claiming that Beazley is trying to impute Melendez's wrongful acts to Singletary. Second, plaintiffs argue that the claim itself is not that of the SSA, but of the social

security beneficiaries, and that therefore the SSA's demand for payment actually arises out of tort and not breach of contract.

Neither of plaintiffs' arguments is persuasive. First, funds were misused by a former director of FAMS acting in her capacity as an employee. This is enough to constitute misuse by "[the] organization" under Form SSA-11. Next, courts have held that "it is clear that nothing in these statutes expressly states that a beneficiary may file a lawsuit against a representative payee who has misused his or her benefits payments or otherwise violated the terms of the representative payee provisions." Bates v. Nw. Human Servs., Inc., 466 F.Supp.2d 69, 98 (D.D.C. 2006). The beneficiaries have no claim against FAMS under the statutory scheme, and therefore the demand for payment by the SSA cannot be construed as a claim in tort. Regardless of whether the claim belongs to the beneficiaries, Form SSA-11 clearly requires that the representative payee reimburse the SSA for misuse of benefits. The form does not contemplate eventual payment to the aggrieved beneficiaries; it simply indicates that FAMS and Singletary "[m]ay be held liable for repayment if [FAMS] misuse[s] the payments." Def.'s Mot. Ex. 11.

The court grants Beazley's motion for summary judgment on plaintiffs' breach of insurance policy claim. Plaintiffs do not dispute that Form SSA-11 created a contract between FAMS and the SSA, under which FAMS agreed to reimburse the SSA for any misused funds. Therefore, the claim for repayment by the SSA was under an express written contract. Because the term "loss" explicitly excludes "damages representing amounts allegedly owed" under such a contract, coverage was not triggered by the SSA's demand, and Beazley had no obligation to pay under the policy.

### B. Bad Faith Claim

Beazley argues that if there is no coverage under the policy, it is entitled to summary judgment on the bad faith claim. Under South Carolina law, an insurer's reasonable ground for contesting a claim for coverage precludes a finding of bad faith. Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 493 (4th Cir. 2005) (quoting Crossley v. State Farm Auto. Ins. Co., 307 S.C. 354, 360 (1992)). Beazley argues that the absence of coverage establishes a reasonable basis on which to decline plaintiffs' request for coverage.

However, as noted by plaintiffs, South Carolina recognizes a cause of action for breach of the implied covenant of good faith and fair dealing independent of any breach of contract, and "breach of an express contractual provision" is not a "prerequisite to bringing the action." Tadlock Painting Co. v. Md. Cas. Co., 473 S.E.2d 52, 55 (1996). South Carolina courts have held that "the covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." Mixson, Inc. v. Am. Loyalty Ins. Co., 562 S.E.2d 659, 662 (S.C. Ct. App. 2002).

There is, admittedly, some tension between the proposition that a reasonable ground for contesting a claim for coverage precludes a finding of bad faith and the existence of separate, distinct causes of action for bad faith and breach of contract. However, another court in this district, when considering this apparent tension, held that "the crux of a bad faith claim is still whether there is a reasonable ground for the insurer's actions." Wactor v. Jackson Nat. Life Ins. Co., No. 8:11-cv-3167, 2013 WL 3479767, at *6 (D.S.C. July 10, 2013) (citing Crossley, 415 S.E.2d at 397; Helena Chem. Co., 594

S.E.2d at 462). Plaintiffs have advanced no evidence disputing Beazley's claim that it acted reasonably by relying on the policy. Because Beazley acted reasonably in denying coverage under the policy, the court grants Beazley summary judgment on the bad faith claim.

### C.     Declaratory Judgment

Plaintiffs' final claim is for a declaratory judgment that Beazley owes benefits under the policy. As discussed above, there is no coverage under the policy for amounts owed under a written contract. Therefore, the court grants summary judgment for Beazley on plaintiffs' declaratory judgment claim.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** defendant's motion for summary judgment.

**AND IT IS SO ORDERED**.

                                                             **DAVID C. NORTON**
                                                             **UNITED STATES DISTRICT JUDGE**

**November 5, 2013**
**Charleston, South Carolina**

7